Bland, Chancellor.
This case standing ready for hearing on the motion to rescind the order appointing a receiver, the counsel on both sides were heard, and the proceedings read and considered.
There have been, of late, many applications to this court for the appointment of a receiver. The power of making such an appointment, by some, has been contemplated as, at least, a new exhibition of the jurisdiction of this court., It 'seems to have been considered in the argument as one of an unsettled and questionable nature. That it is a power which has not, until of late, been very frequently resorted to may be admitted; but, there can be no doubt of its being an authority properly belonging to this court. In an order, passed about twenty years ago, the then Chancellor speaks of the power, as one which rightfully belonged to the court, and respecting which there was then no question whatever, (a) It is a power -of the Court of Chancery of England, which appears to have been very frequently called into action during more than a century past. All the leading principles in relation to it were well established there, long before our revolution ; and it was then, and has ever since been considered, there and here, as a power of as great utility as any which belongs to a court of chancery. And, that it is so, will appear very evident, from a review of the- nature, and the variety of the exigencies in which it has been called into action; either to prevent fraud, to save the subject of litigation from material injury, or to rescue it from inevitable destruction.
Much the greater number of the English reported cases, concerning receivers, relate to real estates, and most frequently are such as have arisen' between mortgagors and mortgagees. In almost all of them the office and duty of the receiver have been *421 extended no further than to exclude trespassers, to make such repairs as are indispensably necessary, and to collect and account for the rents and profits. But, where the preservation of personal property has been the object, the receiver has been, in many respects, invested with the authority of a curator bonis of the Roman law. He has been directed to take into his possession all the moveables; and if any were of a perishable nature, to sell them. He has been directed to collect and sometimes to pay debts. Where there has been a breach of duty by a partner, a receiver has been appointed and charged with the winding up of an unsettled commercial concern.(b) And in all cases he has been held bound to render a strict account of his stewardship. A receiver is an officer of the court. He is considered as truly and properly the hand of the court; but his appointment determines no right; nor does it affect the title to the property in any way; it will not even prevent the running of the statute of limitations. The holding of the receiver, is the holding of the court for him from whom the possession was taken; therefore, should any loss happen it must be borne by him from whom the property was taken, not by the party at whose instance the receiver was appointed, (c)
But it has been argued, that a measure so prompt and vigorous, as that which has been adopted upon the present occasion, may be applied to the most pernicious purposes; that it is open to the greatest abuse; and that the consequences of such a procedure among commercial people, may become most mischievous and irreparably ruinous in its operation. I have meditated upon what has been urged in this respect.
That this court should have the power in unusual and pressing emergencies, at the instance of a party interested, effectually and without delay to put its hand upon property, so far as to prevent waste, inextricable confusion, or total destruction, seems to be admitted by all to be clearly right, or at least highly beneficial. The apprehension of abuse from such a power, when exercised by means of a receiver, seems to have arisen from a contemplation of the circumstances of this case. These parties were merchants, who had been extensively engaged in trade in the great emporium of our State. And, any merchant, it has been said, by means of this power of the court of chancery, may have his counting-house *422 closed, his trade broken up, and his commercial reputation utterly-blasted at a single blow,, by a malignant application for the appointment of a receiver, founded on a statement of facts altogether fabricated and false.
There is one general answer,' that may be given to this assertion ; which is, that the plainest, most temperate, and best guarded forms of judicial proceedings, known to the common law, have been abused and made the instruments of malice. Of which the multitude and variety of the reported examples, in actions for malicious prosecutions and arrests, afford too strong proof: and, even in this very case, the defendants, by their answer, desire it to be recollected, that the well guarded common law process of replevin has been wantonly and grossly perverted and abused to their great wrong and injury. But upon the present occasion, since these applications have, of late, become more frequent, it may be well to consider this matter more particularly.
A receiver is never appointed before answer, but upon very strong special ground supported by affidavit ;(d) or, as is the practice in this State, on a bill sworn to by-the complainant; or, in case of his not being in this State, by some one conusant of the facts stated. A motion to rescind an appointment is always heard on a short notice; and a receiver is in no case permitted to take charge of the property without having first given bond with approved surety. So far then this chancery power is at least as little susceptible of abuse as the process of replevin, as is shewn by the example furnished by the defendants’ answer. But, this is not all; there are other safeguards against the abuse of this power. The court always reluctantly interferes against the legal title, only in a case of fraud clearly proved, and of imminent danger; and a receiver will not be appointed when the matter in dispute depends on the legal title; unless strong grounds are shewn, and the rents and profits are in imminent danger.(e)
Where a plaintiff is permitted to come into a court of chancery in behalf of himself and other creditors, or may sue here because of the equitable nature of his claim, and in respect of a fund in the hands of the defendant, out of which he has a right to ask payment, he may, under certain circumstances, have a' receiver put upon the property or assets liable to his claim. But under no other *423 circumstances does it appear, that the estate of a debtor may be put into the hands' of a receiver at the instance of a creditor. In most cases the application is founded upon the fact, that waste, or peril has assailed or does then immediately threaten the property in question. But there are cases in which it may become necessary to interpose for the purpose of keeping the profits of an estate in litigation apart from those arising from another which is not the subject of controversy; on the- ground, that they are likely to become so inextricably mingled as to render it extremely difficult or impossible to make a correct estimate of those of the litigated estate after the right to it shall have been regularly determined. In such cases the court will appoint a receiver of the rents and profits of the litigated property. As where, certain wharves were claimed by the plaintiff in opposition to the city of Baltimore, a receiver was directed to collect the wharfage of those wharves, the, right to which had been'made the subject of litigation, and keep it separate from that collected for the use of other wharves under the authority of the city, (f)
This, however, is not the case of a third person attempting to stop the course of a firm, or of any one then actually engaged in trade; but is the case of a partnership where one of the partners has averred, that their trading has ceased, and that the firm is utterly insolvent, and thereupon asks for the appointment of a receiver as the only means of saving him and their creditors from the fraudulent practices of his co-partners. Now, in cases of partnership it must strike every one, that to whatever extent of malignancy, or fraud a partner might be urged or tempted to go in a condition of actual insolvency; yet, finder other circumstances, his own interest would withhold him -from attempting to have this power of the Court of Chancery applied to an unjust and pernicious purpose; for, it is rare that a man coolly indulges his malice to the ruin of his own interests. And, therefore, it cannot often happen, that a partner will deliberately abandon a gainful and' prosperous traffic in which he is in the undisturbed participation, and maliciously endeavour to break it up, by fabricating such a statement as will induce the Chancellor to order the joint funds into the hands of a receiver, (g)
But, suppose a partner, in a prosperous and lucrative concern, to be actuated by such malignant feelings; how far could he carry *424 the abuse of this power; and to what extent, by its means, could he injure his antagonist? The appointment of a receiver does not, of itself, divest any one of possession; it merely authorizes the receiver to. demand, and to accept the possession when voluntarily delivered, or to take it when held by no one else. For, if the holder of the property refuses to deliver it, the receiver or party interested must apply to the court for an order to deliver possession, or to shew cause to the contrary. In all cases, where the order making the appointment has been made ex parte, and before answer, the defendant is allowed to come in at an early day and move to have the order rescinded. And, as regards third persons, who may have an interest in property thus ordered to be taken possession of by a receiver, they too are allowed, in a summary way on notice of motion, to come in and be examined pro inieresse suo.(h)
Upon the whole, from whatever point of view this chancery power may be contemplated; or in relation to whatever of the various emergencies, to which it has been applied, it may be considered, it will be found in all respects as safe, and as little liable .to abuse as any judicial procedure known to the common law.- It will be found in practice, that little or no useless pressure can be produced in any case; and that, in no instance, can the mischief continue long before the party aggrieved may have an opportunity of being fully heard, and of obtaining complete relief.
This bill has been filed by one partner against his copartners, charging them with a design to consume and waste the joint property, or to apply it to their own use : and it avers, that the firm is absolutely insolvent. The answer denies these charges of the bill, but admits the insolvency of the firm; and then charges the plaintiff with a design so to apply the joint funds as to give an undue and improper preference to one or more of their .creditors. These parties have, in many respects, given an opposite and very different account of the state of affairs between them. They both, however, admit the present insolvency of the firm; and agree, that according to the stipulations of their contract of copartnership, the term of its duration has not yet expired.
It seems to be admitted, where a specified period of time is limited for the continuance of a partnership, that neither party can, at his option alone, dissolve the connexion. But, although such *425 a partnership cannot be terminated at the pleasure of either party: yet, where, as in this instance, there is no express stipulation to the contrary, the partnership is virtually dissolved by the death of either of the parties. And it is said, that in England the bankruptcy of one partner operates, like death, as a virtual dissolution of the firm. In point of principle, and so far as relates to the matter now under consideration, there can be no difference between a bankruptcy, according to the English law, and an actual insolvency in fact, according to our law. So-long as a man carries on his business and has a prospect of gain, he is not considered as insolvent; but if, in addition to such deficiency of property, his j business so far declines as to leave him no prospect of paying his debts, he is then, according to the universal sense of mankind, insolvent. Whether he is declared to be iri this condition according to the technical process of the English bankrupt law; or is admitted to be so in fact, the effect upon the contract of copartnership must be the same. The insolvency is the total destruction of the pecuniary capacity of the partner to fulfil his contract of copartnership. But his pecuniary capacity was the basis on which } it rested. The contract itself, therefore, must be considered as effectually annulled, as if the party were dead. If both of them! be insolvent, or dead, there is no efficient or living capacity left to execute the contract; if one only be dead or insolvent, the terms! of it cannot be complied with; and where personal confidence was the principal inducement for making the agreement, as in contracts of this nature, it would be unreasonable; and, therefore, the other party shall not have the executor, administrator, trustee or assignee of the deceased, or of the insolvent, intruded upon him. Consequently, the partnership between these parties must be considered as having been virtually and effectually terminated by their insolvency. It can be extended over no new transactions, nor be allowed to expand itself any more. It must be wound up and brought to a-close; and, except for such purposes, must be deemed to have totally ceased to exist, (i)
While a man continues solvent, the order in which he pays his creditors is a matter of indifference, since none can suffer; and therefore, no one creditor has a right to complain of the preference given to another. But so soon as he becomes insolvent, that pri *426 vilege ceases; and equity requires, that he should make an equal distribution of his effects among them all. The giving of an undue and improper preference, under such circumstances, is denounced by the express provisions of our insolvent laws, as a fraud. And in all cases, where a court of chancery can be called on, and does interpose for the-purpose of administering the assets of an insolvent debtor., it is governed by the rule of equality; because equality is equity. The assets, if insufficient to pay all, are always distributed proportionably.- But, although this is the duty of an insolvent debtor; and is what a court of chancery will do for him in all cases, where his effects can be subjected to its control; yet if a creditor can fairly and legally obtain full payment from his insolvent debtor, equity will not deprive him of his legal advantage and compel him to refund.
These parties admit themselves to be insolvent debtors. The plaintiff charges his copartners, the defendants, with a design to waste the joint property, and to apply it to their own use. The defendants deny these allegations, and charge the plaintiff with a design to misapply the funds, and to give to some of the creditors an undue preference. Taking the charges of the plaintiff and of the defendants, or of either party to be true; or allow, that each or either party was about to waste the property, or has his favourite creditors to whom it is his design to give an undue preference; and it is clear, that one or the other or both of them have formed a fixed resolution to violate one of the great principles of equity, which it is the peculiar province of this court to prevent. None of the creditors of these insolvent debtors, so far as it appears, have, as yet, obtained any legal advantage. It is proper therefore, that this court should now lay its hands upon the joint property of this partnership, and let all its creditors come in pari passu, and according as their respective priorities, if any, should appear. Both parties profess to have had this equitable distribution in contemplation ; both acknowledge themselves to be in that insolvent condition, in which the making of such an equitable distribution has devolved upon them as a duty. And yet each charges the other with having made an effort, and formed a fixed design to disregard this duty. Neither of them seems to have the least confidence in the other. Under all these circumstances, I consider this as a case, in which it is peculiarly fit and proper, that a receiver should have been appointed before answer, and should now be continued, *427 as a means of winding up the affairs of this partnership in safety, and with justice and equality to all concerned.(j)
It follows as a necessary consequence of appointing a receiver before answer, that the selection of the person to be appointed must be made by the Chancellor on the ex parte recommendation of the party applying for the appointment. In England, the selection of a suitable person is, most commonly, referred to a master, by whom both parties may be heard ; but here, that duty must be performed by the Chancellor himself. And, -in this case, the selection of a suitable person, as well as every other matter in relation to the application for the appointment of a receiver, is now as entirely open for consideration as if nothing had been previously done. The appointment that has been made may be rescinded; the continuance of a receiver may be altogether refused; or the appointment may be how made more suitable to the circumstances of the case.
The recommendations of those most interested, and who are most likely to sustain injury without an appointment of a receiver, have generally been most regarded. The being a near relation of either party is not in itself an absolute disqualification, but it must be allowed to have its weight when connected with other circumstances.
In this case I am of opinion, that the present receiver, David Williamson jun’r, ought to be removed. Jealousies have been excited against him. He is the brother of one of the parties, and the son of one who claims to be a large creditor of the firm. He is admitted by the plaintiff to have taken an active part in this controversy as his agent and friend. And he is charged by the defendants with having been active by undue means to their great prejudice. His feelings and affections appear to have become too much enlisted to permit him to be as unbiassed and impartial as a receiver ought to be in winding up the partnership affairs of these insolvent debtors.
Jacob Schley has been recommended by some of the creditors, or those who allege, that they are creditors of the firm; and the counsel of these litigating parties admit him to be in all respects capable and fit; I shall therefore appoint him. This receiver will, as usual, be at present invested with no other authority than to receive and take care of the effects of these insolvents; but any *428 further authority and. directions that may be necessary, will be given when applied for, and as circumstances may suggest and require. The compensation of the receiver removed, and of the one now appointed, will be determined on a representation of their trouble, skill, and merits, as to which the parties will be heard.
From what has been said the reasons for continuing the injunction must be sufficiently evident. It is, in this case, a suitable auxiliary to the appointment of a receiver; and therefore will be allowed to operate until the hearing or further order, (k)
With regal’d to the exceptions, that have been taken to the defendants’ answer, it may be sufficient to remark, that from the manner in which they were treated in the argument, it did not appear, that the plaintiff wished them to be now decided upon; and, as it was not necessary to do so, they have been passed over for the present.
Whereupon it is ordered, that Jacob Schley, of the city of Baltimore, be and he Is hereby appointed a receiver, with power and authority to receive and take charge and possession of the goods, wares and merchandise, books, papers, and effects of and belonging jointly to the said Charles A. Williamson, John B. Wilson, and John JV. Woodard, lately trading under the name and firm of Wilson, Williamson & Co. And also with power and authority to sue for and to collect the debts due unto the said firm. And the said Charles A. Williamson, John B. Wilson, and John JV. Woodard, and each of them, are hereby required to yield up and deliver unto the said Jacob Schley the goods, wares, and merchandise, books, papers, and effects of or belonging to the said firm. And it is further ordered, that before the said Jacob Schley proceeds to act as a receiver by virtue of this order, he shall give bond to the State of Maryland in the penally of thirty thousand dollars, with surety to be approved by the Chancellor, for the faithful performance of the trust reposed in him by this order, or which may be reposed in him by any future order in the premises. And it is further ordered, that the said David Williamson jun’r, be and he is hereby removed from the office of receiver, to which he was appointed by the order of this court of the third instant; that he make report and render unto this court a full and .fair account of all the property or money which may have come to his hands, and of all his proceedings *429 while he acted as such. And he is hereby directed and required to yield up and deliver over unto the said Schley, so soon as he shall have been qualified to act as receiver as before mentioned, all the goods, wares and merchandise, books, papers, and effects of the said firm which may have been received by him the said Williamson, or which he may now hold or have under' his control. And it is further ordered, that the injunction heretofore granted in this case be and the same is hereby continued in full force until the hearing or further order.
After which Jacob Schley, having filed his bond with approved surety as required, proceeded to act as authorized; and on the 8th May 1826 made a report, on oath, in which he stated, that he had obtained possession of the books and papers of the firm, and a large amount of their' goods and effects, which, as he represented, it would be most for the'benefit of all concerned to have sold at auction on a credit.
9th May, 1826. — Bland, Chancellor. — Upon consideration of the report of the receiver, it is ordered, that Jacob Schley, the said receiver, be and he is hereby authorized and required to sell the goods, wares and merchandise in the said report mentioned on a credit of four months for approved endorsed notes, according to the usual course and manner of selling goods at auction in the city of Baltimore. And he is hereby further authorized and directed to sell any other goods, wares and merchandise, being the joint property of the said parties, which may come to his hands, in such manner as he may deem most beneficial and best for the interest of all concerned.
It was also ordered on the same day, that the exceptions to the defendants’ answer should stand for hearing on the first day of June then next. And on the 17th of July following, on the admission of the defendants’ solicitor, it was ordered that the exceptions be sustained, and that the defendants make a more full and perfect answer on or before the first day of the next term. On the same 17th July, the plaintiff by his petition stated, that a large sum had been collected by the receiver, which he prayed might be distributed among the creditors of 'the firm; sundry creditors of the firm also filed their petitions in this case, alleging that the receiver had in his hands a large amount, which they prayed might be applied in satisfaction of their claims. And at the *430 same time the receiver reported, that he had a considerable sum in his hands, as to the disposition of which he prayed the order and direction of the court.
21 st July, 1826. — Bland, Chancellor. — Upon these petitions of those who present themselves in this suit as creditors of the firm of Wilson, Williamson & Co., it becomes necessary to consider this case in a new point of view; and to determine its general character, as well in relation to the original litigants, as to those who now propose to be admitted as parties, and have a control over its future course.
The bill states, that a partnership had been formed and conducted for some time between the plaintiff and the defendants, and that the firm had, just previous to the institution of this suit, become insolvent ; these facts have been admitted by the answer. These original parties are then, at least to the extent of their joint concern as merchants, to be considered as insolvent debtors; as such they must, in equity, be regarded as mere trustees for the benefit of their creditors ; and therefore neither of them can be allowed to derive any pecuniary advantage to himself from this suit. The proper and sole object of this bill is to'have the funds of Wilson, Williamson & Co. collected and distributed, so far as they will go, among the creditors of the firm in satisfaction of their claims, according to the principles of equity. This matter has been brought here by insolvent debtors for the purpose of obtaining a partial discharge from the claims to which they are liable, and in that way to procure some relief to themselves. But the whole pecuniary benefit of the suit, must, according to their own admissions, be awarded to their creditors. The mere form and phraseology of the bill cannot materially affect the nature of the case which it brings before the court; and hence, although this is not a suit instituted by a creditor either for himself alone, or for himself and others, against his insolvent debtor; or- against the representatives of his deceased debtor to have his real and personal assets administered for the benefit of his creditors ; yet it is a suit which, by the express admission of the insolvent parties, has placed under the control of the court a considerable fund for the benefit of those who are the creditors of the plaintiff and the defendants jointly. It must therefore be considered in all respects as a creditors’ suit; and these petitioning creditors must be allowed to come in as parties ; and all the other creditors of this firm must be called on by a public notice, in the usual form, to bring in the vouchers of their *431 claims by a limited time, before any distribution can be made of the funds now in the hands of the court. With regard to the authentication of claims, and the conflicting rights- of claimants, the court will be governed by its established rules in similar cases, as any such .questions may arise.(l)
*432 Whereupon it is ordered, that the .plaintiff give notice to the creditors of the firm of Wilson, Williamson & Co., to file their claims in the chancery office, properly authenticated, on or before the fifteenth day of November next, by causing a copy of this order to be published in the American once a week for three successive weeks on or before the 21st day of August next.
After the publication of this order as directed, the plaintiff by petition stated, that many of the creditors of the firm had not brought in their claims; upon which it was ordered, on the 17th of November 1826, that the time for the production of claims be extended to the first day of December, and that public notice thereof be given by a publication of the order in the American newspaper. Proof of the publishing of these orders was made in the usual manner by filing a certificate of the editor of the newspaper in which they had been inserted. And many of the creditors of the firm having filed the vouchers of their claims, the plaintiff on the 9th of December filed exceptions to many of them for want of the requisite proofs and testimonials of authenticity; and against some because of their not being in their nature admissible as claims against this firm.
11th December, 1826. — Bland, Chancellor. — Notice having been given as ordered, to the creditors to exhibit their claims, and the case being now in a situation to have an account stated, on motion' of the parties, it is ordered, that this case be and it is hereby referred to the auditor, with directions to state, from 'the proceedings and proofs, an account or accounts shewing the amount due from the firm of Wilson, Williamson & Co., to each of their creditors who have exhibited their claims to this court; and also the *433 proportion which each one of them may be entitled tó receive out of the funds in the hands of the receiver after- all just- allowances have been. made. And also to state such othér accounts as the nature of tire case, or the parties may require.
The first receiver, David Williamson jun’r, who was appointed on the third, and removed on the twenty-fourth day of April last, is hereby allowed one per cent, on the amount now about -to be distributed among the creditors of the said firm. The present receiver Jacob Schley is hereby allowed eight per cent, on the- same amount, as a compensation for his trouble in receiving the same; and in paying over to each creditor his portion thereof, according to the statement of the auditor, after it shall have been confirmed by the Chancellor. Each of these receivers are also to be allowed such expenses as they may either of them have incurred, as suqh, in the defence and preservation of the property committed to their keeping, and in the execution of the trust reposed in them; of which expenditures they shall produce before the auditor vouchers authenticated in the usual manner.
On the 13th February, 1827, the auditor made a report, with a statement of the distribution of the funds among the creditors who had then filed their claims. Assuming as directed the principles and rules of the court applicable to claims brought in under a creditors’ bill, the auditor stated, that there were then filed thirty-two claims; that many of them were not proved as required; that others were founded on endorsed notes or joint liabilities, and those who were so jointly liable with the firm were not shewn to be mere sureties or insolvent; and that others were objectionable in their nature because of its not clearly appearing that they were properly debts due from the firm. This report, at the- instance of the receiver, was revised by the auditor to rectify some mistakes as to the amount stated to be in his hands ; and to let in some allowances to him for his expenses ; and another statement was reported by the auditor on the 22d February 1827.
The plaintiff by his petition alleged, that the evidence to support his exceptions to the claims of Charles Cappeau, Garrett Broion, Charles and J. Walker, and Lot Ridgely, was within the knowledge of those parties respectively. Wherefore he prayed, that they might be ordered to answer those exceptions on oath.
30th March, 1827. — Bland, Chancellor. — Ordered, that Charles Cappeau, Garrett Broion, Charles and' J. Walker, and Lot Ridgely *434 make answer on oath or affirmation to the exceptions as prayed by this petition, on or before the sixteenth day of May next, or shew good cause to the contrary: Provided a copy of this order and the petition and the exceptions therein referred to be served on each of them on or before the tenth day of April next.
On the 21st May following they filed their answer accordingly.
Lot Ridgely and others creditors of the firm on the 6th of April 1827, filed exceptions to the allowance of several claims as stated by the auditor; and at the same time by their petition prayed to have leave to take testimony in relation to their exceptions.
7th April, 1827. — Bland, Chancellor. — Upon this application it must be recollected, that in a creditors’ suit, as this is, each creditor has a right to assume the position of a plaintiff, as against his debtor, whatever may be the nominal station ,of such debtor in the suit then depending before the court; that each creditor, having an interest in excluding the claims of all other creditors, so far as the admission of their claims to a participation of the funds would lessen the amount of satisfaction he would- otherwise obtain, has a right to plead the statute of limitations, or make any objection to the allowance of any claims which the debtor himself could make under similar circumstances; and that each one of the debtors, or their representatives, may make any defence against a claim which he would be permitted to make if he alone were charged as the only debtor. Hence it follows, that in taking testimony in relation to such a contested claim,-in order that it may be impartially taken, the party requiring it must give notice to the party directly to be affected by it, or to some one who has an interest in cross examining the witnesses, and having their testimony fully and correctly reported to the court. To give notice to all the creditors would be impracticable; and to indulge the parties in such cases in taking testimony wdthout limit as to time would be contrary to reason and the usual course of the court in similar cases.
Whereupon it is ordered, that any creditor of the firm of Wil~ son, Williamson & Co., whose claim is stated or noticed by the auditor in his report, and also the said copartners, be and they are hereby, severally authorized to take the deposition of any witnesses in relation to such claims, before the commissioners appointed to take testimony in Baltimore; provided, that three days’ notice be given as usual, by the creditor, in whose behalf the testimony is *435 proposed to be taken, to some two or more other creditors, or one or more of the firm or their solicitor; or by one .or more of the firm, in whose behalf the testimony is proposed to be taken, to some two or more of the creditors or their solicitor. But the creditor against wfhose claim the testimony, when taken, is intended particularly to operate, must himself or his solicitor be so notified. And depositions so taken, subject to all legal exceptions, may be read in evidence; provided they are filed in the chancery office on or before the first day of May next.
The plaintiff by a petition filed on the 6th of April 1827, stated, that Jacob Schley the receiver was then dead; and that administration had been granted on his estate: upon which he prayed, that another receiver might be appointed, according to the recommendations therewith filed; to whom the administrators might be ordered to pay and deliver over the money, property, books, and vouchers of the -firm which had come to the hands of their intestate. And on the 12th of the same month John Scott, who had been thus recommended by almost all the creditors, filed his remarks and propositions, in which he says, that he was willing to serve as receiver without any commission upon the money received by the late Jacob Schley.
4ih May, 1827. — Bland, Chancellor. — A receiver appointed by this court must be considered as its agent or executive officer. He stands in a situation, as regards this court, in many respects analogous to that in which a sheriff is placed in relation to a court of common law.
It is made the duty of a sheriff by a fieri facias to seize and taie into his possession the property of the defendant; to convert it into money, and to bring the money so made into court or pay it to the plaintiff. In this respect a sheriff acquires a possessory right tó the property which he has been thus authorized to seize and take into his possession; he may maintain an action grounded on such right; and the defendant whose property has been so taken is discharged in toto or to the amount of the value seized in execution. And the’sheriff alone is held answerable to the amount which has so come to his hands to the plaintiff, at whose suit the levy was made.(m)
The express terms of the order of appointment in this, as in all *436 like cases, placed tlie receiver in a similar situation. He is regarded as a trustee in respect to tlie possession, care, and distribution of the property committed to his charge; and as such it is his duty to prevent the property, so handed over to his keeping, from being blended with his own, and to keep such clear and separate accounts of his transactions as receiver as will enable him at all times and immediately when called on to shew the "amount of money and property in his hands; and so distinctly to designate it, as that it may be traced and followed into the hands of any one who may have wrongfully obtained possession of it.(n) A receiver is always required to give bond to account and submit to orders ; and if he fails to account, or is, in any respect, delinquent as an officer of the court,(o) he may be proceeded against in a summary way by attachment; or his bond.may be put in suit by scire facias in this court, or an action at law so as to charge him and his sureties.(p)
But here the receiver died before he had fulfilled his trust, and the question is, how far any of his rights, duties, and liabilities as such have devolved upon his personal representatives ?
Where a sheriff has in his custody persons in execution and dies, the new sheriff must take notice at his peril of all executions against any person he finds in gaol; and that from necessity; because there is no one to make delivery ór give notice to the new sheriff of the persons in custody when the former sheriff died. And if a prisoner should in the mean time, go .out of the walls of the prison, it will not be deemed an escape as against either the late sheriff or his successor; because the prisoner will be considered as in the custody of the law, and may be retaken any where and at any time after.(q) A sheriff, having no property in prisoners detained by him in execution, leaves on his death no right, duty or responsibility, as regards them, to devolve upon his personal representative. But, in personal property taken in execution by him, he has in all cases a qualified interest, so far as to hold possession, to sell and make the money, wherewith to satisfy the plaintiff. And, for such purpose, he may hold and sell it even after his official term has expired and he has ceased to be sheriff, (r) From these principles it would seem necessarily to follow, where *437 the sheriff dies at any time after he has levied the execution, and before he has brought the money into court or satisfied the plaintiff, that the personal property so taken in execution would pass to his executor or administrator as parcel of his estate, which should be kept separate, and applied exclusively in satisfaction of the claim for which it had been taken.
But the act of 1813, ch. 102, s. 1, has provided somewhat differently for this matter, by declaring, that where 'it appears by the return of the late sheriff, that the real or personal property so taken by him had not been sold, the court may, on motion, order a venditioni exponas to the new sheriff, upon which the property, which had been so seized, may be taken wherever found, and sold as upon the original execution.
This provision, however, extends only to cases where .it appears by the return, that the property taken in execution specifically remains unsold; and therefore, where it does not so appear, or where the sheriff had made sale and died before the money was brought in or paid to the plaintiff, there, as the property or money in his hands had passed to his personal representatives, they must be held liable to the plaintiff for whose benefit the execution issued.- And although no action can be maintained against the executor of a sheriff grounded on the misfeasance or breach of duty of his testator, yet the plaintiff may recover of the executor of the sheriff, in an action of debt, any money which he had levied under a fieri facias and had not paid over.(s) In Maryland the plaintiff would be allowed.to recover his debt by a suit upon the sheriff’s bond, and then the sureties who had thus been compelled to pay the debt would have a right to take the place of the plaintiff as against the representatives of the sheriff.
Upon analogous principles, on the death of a receiver appointed by this court, it appears to be clear, that in so far as he had a mere duty to perform, like that of a sheriff in safely keeping his prisoners, nothing could devolve upon his representatives ; but that where he had acquired a qualified interest in personal property as a bailee, and which it was his duty to keep apart from his own, and account for; and where he had, in obedience to an order, sold and converted property into money, such property and money must be considered as having rightfully passed into the hands of his personal representatives, as 'the only, or the most sure means of saving *438 harmless the estate of the deceased from the liability to which he had subjected it, by becoming bound as a receiver.(t)
Hence, considering the property and money which the late receiver Jacob Schley had admitted to be in his hands, as having passed into the hands of his administrators, they must be viewed as standing in all respects in his place : and as the personal representatives of their intestate, there can be no more impropriety in proceeding against them in this court by an order nisi, followed by an attachment on their failing to shew good cause, than in subjecting them to an action at common law for the recovery of a debt due by their' intestate, in respect of the assets which may have come to their hands. I shall therefore allow them to be proceeded against in the like summary manner as would have been permitted against their intestate himself were he now alive.
Whereupon it is ordered, that John Scott be and he is hereby appointed a receiver in the place of the late Jacob Schley, with full power and authority to act in all respects as Schley could or might have acted; that before John Scott proceeds to act as a receiver by virtue of this order, he shall give bond to the State of Maryland in the penalty of thirty thousand dollars with a surety or sureties, to be approved by the Chancellor, for the faithful performance of the trust reposed in him by this order, or which may be reposed in him by any future order in the premises; and that John Scott shall be allowed no commission for his trouble in receiving and distributing any property or money which may come to his hands under this order as receiver.
And it is further ordered, that Anna B. Schley, John J. Mayer, and Henry Schroeder jun’r, administrators of tire late Jacob Schley, make report and rénder unto this court a full and fair account of all the properly or money which may have come to the hands of their intestate, the late Jacob Schley, and of all his proceedings while he acted as receiver in this case; and also, that they render a full and fair account of all property and money which had so come to the hands of their intestate, and which may be now in their hands; and of their proceedings in relation thereto. And the said administrators are hereby directed and required to yield up, deliver over, and pay unto John Scott, so soon as he shall have been qualified to act as receiver as before mentioned, all the goods, wares, merchandise and moneys, books, papers, and effects of the firm of Wilson, *439 Williamson & Company, which may have been received by their intestate, and have come to their hands, or which they may now hold, or have under their control: Provided, that a copy of this order, together with a copy of this petition be served on them, on or before the tenth instant, to the end, that they may shew cause, if any they have, on the first day of June next, why they should not fully and in all respects comply with this order.
On motion it was also, on the same day, ordered, that the statements- of claims heretofore made and reported by the auditor, be confirmed, and the receiver directed to apply the proceeds accordingly; except as to all those claims, that had been at all objected to by the auditor, or to the allowance of which any exceptions had been filed, which claims were suspended until further order.
On the petition and representation of the receiver John Scott.
21 st May, 1827. — Bland, Chancellor.- — It was and still is my understanding and intention to allow to John Scott as receiver no commission on any sums for the receipt and disbursement of which a commission had been allowed to the late receiver Jacob Schley ; it being my determination, if possible, not to charge the estate with double commissions. I had presumed that the late receiver’s account comprehended the whole estate; and that the commissions had been computed and allowed accordingly; but, should that not be the case, then the receiver John Scott will be allowed the usual commissions on all sums on which no commission had been previously charged and allowed.
After which the case was again brought before the court on the report of Anna B. Schley, John J. Mayer and Henry Schroeder jun’r, administrators of Jacob Schley deceased, made in pursuance of the order of the fourth of May last; and the receipt of John Scott the receiver therewith filed.
1st June, 1827. — Bland, Chancellor.- — Ordered, that the said administrators bring into this court the sum of seven thousand four hundred and two dollars and fifty-one cents, the balance remaining in their hands after deducting the commissions and fees as set forth in their said report; which sum the register is hereby directed to deposite in the Farmers Bank of Maryland in the usual manner to the credit of this case. And it is further ordered, that the bond given by the late Jacob Schley, as receiver, be delivered up to the admin *440 istrators to be cancelled ; and that they with the sureties in the said bond, be finally discharged: Provided that a copy of the said report and of this order be served on the present receiver, on or before the twelfth day of this month. Unless good cause to the contrary be shewn during and before the close of the next July term by the said receiver, or by the parties to this case, or by some one interested therein.
Afterwards on the 19th April, 1828, copies having been served as required, and no cause shewn, the bond of the late receiver was ordered to be delivered up, and his administrators were discharged. This case still remained open, and the whole of the funds of the firm not having been finally disposed of, four other creditors filed the vouchers of their claims in the chancery office after the day limited by the orders of the 21st July and the 17th of November, 1826, and prayed to be allowed to come in for a due proportion. The auditor reported a statement of their claims as usual, at the request of the claimants ; and also made several other reports at the instance of creditors who had supplied the want of proof or removed the objections to their claims, since the first general report; and several of those intermediate statements had been confirmed, and the claims ordered to be paid accordingly; after which the case was submitted to obtain an order for bringing it to a final conclusion.
24th May, 1828. — Bland, Chancellor. — According to the course of this court, in creditors’ suits, or where the case, by any proceeding, interposed after its institution, has been necessarily cast into the form of a creditors’ suit, it is indispensably necessary, before any distribution can be made, or satisfaction awarded to any of the creditors, that they should be called on by a publication in some newspaper, or other public notice, to file the vouchers of their claims in the chancery office, on or before a specified day, most commonly four months after the day of the first publication ; but a shorter period may be limited where the funds are small, or the transactions appear to be but little dispersed. After the time allowed to the creditors for bringing in their claims has expired; the auditor, at the instance of any one concerned, may make and report an account distributing the whole of the funds in full satisfaction, or in due proportion among the creditors; giving a preference to those who may appear to be entitled to it. In this first general report, all the claims having any plausible or probable *441 validity, or which may ultimately be sustained by proof, are stated as of course by the auditor, who in this, as in all subsequent reports, in which he first introduces a claim to the notice of the court, informs the Chancellor of all the objections and special circumstances in relation to it, as they appear from the proceedings and vouchers submitted to him. But after the day limited for bringing in claims is passed, and at any time before the funds have been ordered to be distributed, any other creditor may bring in his claim, and he will be put upon a footing with the other creditors so far as it can be done from the funds then remaining in court, by restating the account at his cost.
In a proper creditors’ suit the decree for a sale of an estate for the satisfaction of creditors, in general, is in itself a final decision in favour of the claim of the originally suing creditor; because there can be no such decree unless the plaintiff establishes his claim in whole or in part.- And therefore in such case, where the whole amount claimed by the plaintiff has not been established, it is proper, that the decree should expressly specify the debt decided to be due; leaving the other claims or parts of claims of the plaintiff as stated in the bill to come in after, and be finally disposed of on the usual application for further directions as to them and other claims.
The auditor’s first general report having prepared and arranged all the materials for the judgment of the court, is usually suffered to stand over as of course some short time, after it has been returned and filed; during which time, or before it was made, a plaintiff, or a defendant or a co-creditor, who has not by any previous act lost his opportunity or waived his right to do so, may plead the.statute of limitations or put in any exception to the claim of any creditor, upon which he may ask the judgment of the court. If such exception presents a question of fact, an answer on oath may be called for, and proofs taken in relation to it; but if it presents only a question of law, then, or after the answers and proofs have been returned and filed, a day may be appointed for the hearing of the matter. But if after the lapse of a reasonable time no exceptions are taken to the auditor’s first general report, it may be confirmed as to all claims, not objected to, and the payment of them be ordered accordingly. If a creditor finds it necessary to have time to obtain testimony to sustain his claim and remove the objections made against it, he may have time allowed him to collect his proofs for that purpose within or beyond the jurisdiction *442 of the court; and the decision may be postponed and the amount set apart to meet it reserved accordingly.
But after a reasonable time has elapsed; and where it does not appear, that any of the creditors whose claims have been objected to have been allowed time for further proof which had not then expired, and there are still some claims, the objections to which have not been removed, the case may be referred to the auditor with directions to state a final account excluding all claims not then sufficiently authenticated so as to bring the whole controversy to a final conclusion. This case now stands in that situation.
Whereupon it is ordered, that this case be and the same is hereby referred to the auditor with directions to state a final account, from which he will "exclude all claims not now sufficiently authenticated ; and also those from which the auditor’s objections, as stated in his former reports, have not been removed. All objections heretofore filed by any party against the allowance of any claims, which have not been determined by the court to be valid, are hereby overruled.
Notwithstanding this order, the parties appear to have acquiesced in leaving the case open, or to have waived the right to call for a final account as ordered; for, on the 26th May 1830, a special confirmation of the auditor’s report of the 22d of May 1828 was called for and ordered accordingly, by which it would seem that the case had been brought to a final termination; but the objections to claim No. 21, 27, and 28 having been withdrawn, the case was again submitted, upon which on the 3d of May 1831, it was sent to the auditor to state a final account as required by the order of the 24th of May 1828.

 The Wharf Case, 1806, post, vol.

 Peacock v. Peacock, 16 Ves. 49; Harding v. Glover, 18 Ves. 281.

 Pow. Mort. 294, note; 2 Mad. Chan. 233.

 Duckworth v. Trafford, 18 Ves. 283.

 Lloyd v. Passingham, 16 Ves. 59; Norway v. Rowe, 19 Ves. 148, note; Maguire v. Allen, 1 Ball & Bea. 75.

 The Wharf Case, post, vol. ii.

 Gow. Partner. 244.

 2 Mad. Chan. 245.

 Ex parte Williams, 11 Ves. 5; Harding v. Glover, 18 Ves. 281; Vulliamy v. Noble, 3 Meriv. 614; Crawshay v. Maule, 1 Swan. 506.

 Peacock v. Peacock 16 Ves. 49.

 Eden. Inj. 220.

 Barnaby v. Hollingsworth. — The bill filed 2d July, 1737, states that John Barnaby, (who was not a defendant,) being indebted to the plaintiff Richard Barnaby, and sundry other persons, conveyed all his property to the defendants H. Hollingsworth, A. Todd, J. Field, and J. Warder, in trust for the benefit of his creditors; that the defendants took upon themselves the trust; obtained possession of the property conveyed, and have refused to distribute the money received, or to sell a part of the real estate, or to account. Prayer to account, for payment, and general relief, &c. The defendants answered, &c. It appears that, by an agreement of October, 1789, signed by the solicitors of the parties, the case had been referred to arbitrators; who, without the sanction of an order by the Chancellor, awarded, that the plaintiff was not the partner of John Barnaby, and that he was indebted to the plaintiff in the sum of £3200 14s. 3id.
28th November, 1739. — Hanson, Chancellor. — This case standing ready for decree, and the bill, answers, exhibits, and award aforesaid being read, and appearing as herein before set forth; it is thereupon Decreed, that the defendants Henry Hollingsworth, Alexander Todd, John Field, and Jeremiah Warder, trustees in the deed aforesaid mentioned in the complainant’s said .bill, bearing date the eighteenth day of January, in the year of our Lord one thousand seven hundred and eighty-seven, do account with the complainant, and render upon oath in this court, a full and particular statement of all the real and personal estate, debts due and owing to the said John Barnaby, and other property assigned and conveyed to the said defendants by the said deed of trust, and what part thereof hath been received by them or either of them, or hath come to their or either of their possession, and how the same and every part thereof, hath been applied and disposed of, subject to such future order and decree as this court shall make in the premises.
After which the defendants made out and filed an account, See.; upon which the following decree was passed
May, 1792. — Hanson, Chancellor. — An interlocutory decree having been passed in this cause, for the defendants to account with the complainant, and to render on oath a full and particular statement of all tire real and personal estate, debts, and other property of John Barnaby to them by the said Barnaby assigned, for the benefit of his creditors; and the said Henry Hollingsworth having in consequence thereof returned an account and statement on oath, by which it appeal's, that he hath in his hands, of the property so assigned by the said John Barnaby, the sum of six hundred and eighty-eight pounds, ten shillings and seven pence,, current money, and also other property, not disposed of and converted into money; and the complainant by a petition, this day filed, having prayed an order of this court to compel the said Hollingsworth to bring into court to be divided amongst the creditors of the said John Barnaby, the money in the hands of him the said Hollingsworth as aforesaid, and also the money by him received as truslee^since rendering the said account:
It is thereupon Ordered, that the said Henry Hollingsworth do immediately bring into this court the said sum of six hundred and eighty-eight pounds ten shillings and seven pence, current money; and that he also render an account of, and bring into this court, all the money by him received as trustee aforesaid, to be distributed *432 amongst the creditors of the said John Barnaby, according to their claims and the intent of the deed of trust of the said John Barnaby to the said trustees.
It is further Ordered, that the creditors of the said John Barnaby have notice to exhibit their claims in this court, on or before the first day of September next, for the purpose of obtaining their respective dividends or just proportions of money arising from the property by him assigned for the benefit of his creditors ; and that the said notice be given by having a copy of the order inserted in the newspaper of Goddard &. Angel, at any time before the sixteenth of June next, and continued therein four weeks successively.
After this, notice having been given, sundry creditors exhibited their claims, and the auditor was directed to state an account apportioning the said sum among them, which was done, and confirmed, and the amount allotted to each directed to be paid accordingly.

 Wilbraham v. Snow, 2 Saund. 47, note.

 Freeman v. Fairlie, 3 Meriv. 41.

 Anonymous, Mosely, 42.

 2 Fow. Exch. Prac. 323; Ex parte Grimstone, Amb. 707; Davies v. Cracraft, 14 Ves. 143; Musgrave v. Medex, 1 Meriv. 49; 2 Harr. Pra. Chan. 120; Grant v. Stone, 1 Vern. 313.

 Westby’s Case, 3 Co. 72.

 Wilbraham v. Snow, 2 Saund. 47 notes.

 Clerk v. Withers, 6 Mod. 299; Adair v. Shaw, 1 Scho. & Lefr. 265.

 Shelf. Lun. 151.